**UNITED STATES DISTRICT COURT FOR**

**THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

COWIN TECHNOLOGY CO., LTD.,

                            Petitioner,                          Case No. 1:23-cv- 03054-ALC

                      -against-

AMAZON.COM SERVICES, LLC,
AMAZON.COM, INC.,

                          Respondents.

-----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF**

**PETITION TO VACATE ARBITRATION AWARD**

**ORAL ARGUMENT REQUESTED**

**JS LAW OFFICE**
200 East 36th Street, 16th Floor
New York, New York 10016
jslawusa@gmail.com
(917) 773-1868

1

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .................................................................5

II.  STANDARD OF REVIEW FOR A VACATUR PETITION .............................6

III. THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT IT IS

COMPLETELY IRRATIONAL TO RULE SECTION 2 ENFORCEABLE .......................6

IV.  THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT          IT

MANIFESTLY DISREGARDS THE LAW TO ...............................................8

RULE SECTION 2 ENFORCEABLE ...........................................................8

   A.   Amazon's Section 2 Failed To Explicitly Designate The Amount To Be Paid "As

   Liquidated Damages And Not As A Penalty Or Forfeiture................................. 8

   B.   Amazon's Section 2 Failed The Reasonable Forecast Test For Validity Of A

   Liquidated Damages Clause. It Is An Unenforceable Penalty Clause....................... 10

   C.   The Final Award Meets The Standard Of Manifest Disregard Of The Law. ........ 13

V.   THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT IT VIOLATES

STRONG PUBLIC POLICY RULE SECTION 2 ENFORCEABLE. ....................................15

   A.   The Shaffer Court Ruled Section 8 Of The BSA Is Unenforceable As It Violates

   Public Policy Under Washington Law's 6-Factor Balancing Test.................................. 15

   B.   The Same Rules from The *Shaffer* Case Apply to Section 2 Of The BSA. ............. 17

   C.   Beyond Section 2, the Compulsory Arbitration Clause in Section 18 Also Forms A

   Part of Amazon's Strategy to Control Sellers. ................................................ 18

VI.  CONCLUSION....................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Barclays Capital Inc. v. Shen*,
    20 Misc. 3d 319 (N.Y. Misc. 2008)……………………………………………………..14, 15

*Brower Company v. Garrison*,
    2 Wash. App. 424, 433, 468 P.2d 469, 475 (1970)……………………………………………11

*Briscoe Protective, LLC v. N. Fork Surgery Ctr.*,
    2023 N.Y. Slip Op. 2120 (N.Y. App. Div. 2023)………………………………………………8

*Forest Marketing Enterprises, Inc. v. State DNR*,
    125 Wash. App. 126, 131, 104 P.3d 40, 43 (2005)…………………………………………...9

*Halligan v Piper Jaffray, Inc.*,
    148 F3d 197, 201-203 (2d Cir 1998)…………………………………………………...6, 15

*Matter of Erin Constr. & Dev. Co., Inc. v. Meltzer*,
    58 A.D.3d 729, 729, 873 N.Y.S.2d 315……………………………………………………6

*Matter of J-K Apparel Sales Co., Inc. v Esposito*,
    189 A.D.3d at 1046……………………………………………………………………..8

*Matter of Kirchhoff-Consigli Constr. Mgt., LLC v Mechtronics Corp.*,
    144 A.D.3d 682, 683…………………………………………………………………8

*Riley v. Iron Gate Self Storage*,
    198 Wash. App. 692, 701, 395 P.3d 1059, 1065 (2017)…………………………………..16

*Shaffer v. Amazon Servs.* (*In re Potential Dynamix LLC*),
    Case No.: 2:11-bk-28944-DPC (Bankr. D. Ariz. Feb. 15, 2021)…………………………passim

*Shields v. Sta-Fit, Inc.*,
    79 Wash. App. 584, 589 (1995)…………………………………………………………...17

*Wallace v. Buttar*,
    378 F.3d 182, 189 (2d Cir.2004)……………………………………………..…..14

*Watson v. Ingram*,
    124 Wash. 2d 845, 850, 881 P.2d 247, 249 (1994)…………………………………...10

*Wien & Malkin Llp v. Helmsley-Spear, Inc.*,
    2006 NY Slip Op 1246, ¶ 8, 6 N.Y.3d 471, 481, 813 N.Y.S.2d 691, 697, 846 N.E.2d 1201, 1207 (2006)……………………………………………………………………6, 14

*Zuver v. Airtouch Comm'n, Inc.*,

103 P.3d 753, 759 (Wash. 2004)……………………………………………………………17

**Statute**

CPLR 7511…………………………………………………………………....5, 6

**Arbitration Cases**

*Dongguan Yanqiude Trading Co., Ltd. v. Amazon, et al.*
   (ICDR Case No, 01-21-0018-1509), "Award" dated August 12, 2022……………….…….14

Finals Award as Exhibits to Petition ..………...…………………………………………... 14

## I.   **PRELIMINARY STATEMENT**

Petitioner COWIN TECHNOLOGY CO., LTD., a a third-party seller on Amazon.com ("Third-Party Seller" or "Seller"), through their undersigned counsel, JS Law, submits the following Memorandum of Law and Authorities in Support of its Petition to vacate the arbitration order in the case of *Cowin Technology Co., Ltd. v. Amazon.com Services LLC, Amazon.com, Inc., et al.*, ICDR Case No. 01-21-0018-0880 ("Petition"), pursuant to CPLR 7511 to vacate or modify the arbitration award ("the Award", Exhibit P1 for original Vacatur Petition filed in March 2023) of Mr. Howard R. Reiss ("Arbitrator") dated December 15, 2022.

The Award must be vacated on the grounds that ***the decision is completely irrational, manifestly disregards the law, and violates a strong public policy*** by ruling Section 2 of the Amazon Services Business Solutions Agreement ("BSA" or the "Agreement", Exhibit P-2 to Petition 1) is a valid liquidated damage clause and enforceable.

Before an independent merchant-a third-party seller can open a seller account ("Seller Account") on the Amazon platform, ***all third-party sellers must fully accept the terms and conditions*** outlined in BSA, which contains Section 3 that allows Amazon's arbitrary at-will account blocking and notorious Section 2 that gives Amazon ***the <u>sole discretion</u>*** to ***<u>permanently</u>*** withhold ***<u>any payments</u>*** to the third-party sellers,  which represent customer payments for merchandise sold by the seller, and as such, are the property of the seller.

The primary legal issue is whether Section 2 of the BSA is a valid liquidated damage clause, which grants Amazon the right to confiscate all sales proceeds in the seller account as purported liquidated damages without filing any counterclaim for damages or presenting evidence to substantiate its claimed damages.  This is done after Amazon subtracts its sales commissions

and service fees from the confiscated sales proceeds and ensures all customer refunds have been properly addressed and deducted from the seized sales proceeds.

In the Final Award, the Arbitrator ruled Section 2 as a valid liquidated damage clause. Firstly, the decision is completely irrational. How does "ANY PAYMENT" in Section 2 clear the "reasonable forecast" test of Washington law, a requirement for a valid liquidated damage clause?

Second, the decision manifestly disregarded the law. It is a well-defined, explicit, and clearly applicable legal principle that a valid liquidated damage clause must pass the "reasonable forecast" test.  Parties argued vigorously about this test in the legal briefs, and the Arbitrator was briefed multiple times about this test. The Arbitrator knew of the governing legal principle. However, the Arbitrator refused to apply it or ignored it.

Last, courts apply a 6-factor balancing test to determine whether a contract provision violates public policy. Under the test, the decision violated strong public policy.

(Please refer to Vacatur Petition for the factual background)

## II.     STANDARD OF REVIEW FOR A VACATUR PETITION

CPLR 7511(b)(1)(iii) provides that a court may vacate an arbitrator's award: [I]f it is clearly *violative of a strong public policy*, if it is *totally or completely irrational*, or if it manifestly exceeds a specific, enumerated limitation on the arbitrator's power. See *Matter of Erin Constr. & Dev. Co., Inc. v. Meltzer*, 58 A.D.3d 729, 729, 873 N.Y.S.2d 315.  In addition, an arbitration award may also be vacated if it is rendered in "manifest disregard of the law." (*Wien Malkin LLP v Helmsley-321 Spear, Inc.,* 6 NY3d 471, 480; *Halligan v Piper Jaffray, Inc*., 148 F3d 197, 201-203 [2d Cir 1998], cert denied 526 US 1034.)

## III.     THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT IT IS COMPLETELY IRRATIONAL TO RULE SECTION 2 ENFORCEABLE

6

Amazon alleges that the Seller breached the BSA by engaging in "reviews abuse" (soliciting sponsored reviews) and is under "common control" with other sellers. Upon its sole determination, Amazon abruptly deactivated the Seller account in 2021 and removed the Seller's selling privilege, per Section 3 of the BSA. Simultaneously, Amazon seized the entire sales proceeds in the seller account, claiming it is entitled to confiscate the ENTIRE sales proceeds for purported liquidated damage per Section 2.

Given the limited scope of court review over arbitration awards, where fact determination is primarily the Arbitrator's purview, the Seller will not delve into the factual background or contest the alleged term violations. For argument's sake, even if we accept that the Seller violated the BSA terms, Amazon has already enacted punitive measures via selling privilege removal and contract termination per Section 3. Amazon must file a counterclaim if it seeks damages for these alleged violations. However, Amazon filed no such counterclaim against the Seller nor provided evidence to substantiate its damages claims.

Also, in the account deactivation notice in 2021, Amazon requested that the Seller wait 90 days for Amazon to settle outstanding transactions, including product returns or refunds, A-to-z claims from customers, inventory removal costs, and outstanding fees; and then the Seller could request the fund remittance. In the present case, nearly two years have passed since the account was blocked and funds seized. Amazon has already settled all outstanding transactions from the seized sales proceeds. Besides, no actual damages have been incurred due to the alleged term violations. Despite these factors, Amazon has refused to remit the seller's proceeds, instead confiscating them under the guise of alleged damages.

Amazon claimed Section 2 is a valid liquidated damage clause. However, the "ANY payment" in Section 2 could not pass the "reasonable forecast" test for a valid liquidated damage

clause. Still, the Arbitrator ruled Section 2 enforceable and allowed Amazon to retain all the sales proceeds as its purported damage, which is completely irrational.

In *Briscoe Protective, LLC v. N. Fork Surgery Ctr.,* 2023 N.Y. Slip Op. 2120 (N.Y. App. Div. 2023), the New York Appellate Division court stated that an arbitrator's award is irrational "where there is no proof whatever to justify the award" (*Matter of J-K Apparel Sales Co., Inc. v Esposito*, 189 A.D.3d at 1046, quoting *Matter of Kirchhoff-Consigli Constr. Mgt., LLC v Mechtronics Corp.*, 144 A.D.3d 682, 683). The court ruled the Briscoe arbitration award was irrational and vacated the award. The same rule applies here. The Final Award, in this case, should be vacated for its irrationality.

## IV.   THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT IT MANIFESTLY DISREGARDS THE LAW TO RULE SECTION 2 ENFORCEABLE

Section 2 of the BSA provides in relevant parts: "If we determine that your account—or any other account you have operated—has been used to engage in deceptive, fraudulent, or illegal activity (including the sale of counterfeit goods), or to repeatedly violate our Program Policies, then we may in our ***sole*** discretion ***permanently*** withhold ***any payments*** to you." Amazon portrays this sentence as a valid liquidated damages clause, while Seller argues it as an unenforceable penalty.

### A. Amazon's Section 2 Failed To Explicitly Designate The Amount To Be Paid "As Liquidated Damages And Not As A Penalty Or Forfeiture.

liquidated damages clauses often explicitly disclaim that the amount payable is a penalty or forfeiture, designating the amount to be paid "as liquidated damages and not as a penalty or forfeiture." See, e.g., *Forest Marketing Enterprises, Inc. v. State DNR*, 125 Wash. App. 126, 131,

104 P.3d 40, 43 (2005) (liquidated damages clause provided that "these payments are agreed to as liquidated damages and not as penalties")

It is noteworthy that what Amazon trumpets as a liquidated damages clause fails to include those words. Nor does the clause in any way take pains to distinguish the amount to be paid thereunder from a penalty or forfeiture, allude to the test for the validity of a liquidated damages clause, or explain how the parties' relationship satisfies that test. Indeed, the language does not even suggest, much less express, that the amount withheld and appropriated thereunder serves as compensation to Amazon. These drafting deficiencies raise the question of whether Amazon intended section 2 of the BSA to serve as a liquidated damages clause or whether it now retrospectively and expediently characterizes the clause as such.

The question becomes more pointed upon review of Amazon's Anti-Manipulation Policy for Customer Reviews, an applicable program policy that the BSA incorporates: "if we determine that an Amazon account has been used to engage in review manipulation, remittances and payments may be withheld or *forfeited*" (italics added). Likewise, Amazon's Seller Code of Conduct provides: "Violating the Code of Conduct or any other Amazon policies may result in actions against your account, such as cancellation of listings, suspension or *forfeiture of payments*, and removal of selling privileges" (italics added). Apparently, *Amazon characterizes the sales proceeds withholding as a forfeiture and a penalty.*

In addition, the language in Section 2, "we *may* in our sole discretion permanently withhold any payments to you," plainly indicates that its invocation of the clause is *optional*. This is problematic for Amazon: "While a few courts have ruled that sophisticated parties may agree to optional liquidated damages clauses, … the majority rule is that such clauses are unenforceable." *See* J.M. Perillo, Calamari, and Perillo on Contracts § 14-32 (6th ed. 2009) (*optional liquidated*

damages provisions *"have been struck down as they do not involve a reasonable attempt definitively to estimate the loss"*). Also, optional liquidated damages clauses are stuck down because they can be invoked selectively when liquidated damages exceed provable actual damages.[1]

## B. Amazon's Section 2 Failed The Reasonable Forecast Test For Validity Of A Liquidated Damages Clause. It Is An Unenforceable Penalty Clause.

*Watson v. Ingram*, 124 Wash. 2d 845, 850, 881 P.2d 247, 249 (1994), recites the standard to determine whether a liquidated damages clause is enforceable: "Washington courts have applied a 2-part test from the Restatement of Contracts § 339, at 552 (1932). Liquidated damages clauses are upheld if *the following <u>two</u> factors are satisfied*: 'First, the amount fixed must be a *reasonable forecast* of just compensation for the harm that is caused by the breach. Second, the harm must be such that it is incapable or very *difficult of ascertainment*.'" (Internal citations omitted.) The reasonableness of a forecast of damages in a liquidated damages clause is judged prospectively—i.e., *as of the time the contract was entered*. *Watson*, 124 Wash. 2d at 851.

The clause becomes a penalty when the amount fixed is stipulated, irrespective of the damage sustained. In Brower Company v. Garrison, 2 Wash. App. 424, 433, 468 P.2d 469, 475 (1970), the Washington Court of Appeals held that the number of liquidated damages must be a reasonable estimation of compensation for damages caused by a contractual breach. It also ruled that "If there is any *reasonable relationship*" between the amount of liquidated damages and the forecast of actual damages, "the clause must stand." There must nonetheless be such a forecast

---

[1] Part of Section A is cited from "Final Award" in *Dongguan Likaixiao Technology Co., Ltd. v. Amazon, et al.* (ICDR Case No. 01-21-0018-1838) dated January 30, 2023.

underlying the clause, and that forecast must be grounded in reason. Put differently, **the basis of a liquidated damages clause must be rational, not arbitrary**.

Amazon cannot seriously argue that the amount of a third-party seller's funds to which it has access at a time of it is choosing just so happens in every case to be a reasonable forecast of just compensation for the harm caused by the breach.

Firstly, the amounts of sale proceeds that await remittance in seller accounts vary by orders of magnitude due to differences in sale volumes. At any particular moment in time, some accounts will contain a minuscule amount awaiting remittance, some will contain tens of thousands, some (like Seller's in this case) will contain hundreds of thousands, and some will contain millions.

Secondly, the amounts of sale proceeds that await disbursement also vary according to the point in time at which Amazon announces its decision to withhold funds. Of course, Amazon is in complete control of this variable. It would routinely time that action to correspond to the date a disbursement would otherwise have been due or right after Amazon Prime Date Sales, thereby maximizing its take. During the mass seller account blocking in 2021, many sellers' amount was blocked right after Amazon Prime Day. The Seller's account, in this case, was deactivated right after Amazon Prime Day in 2021. It shows Amazon did control and choose the account blocking action time to maximize its take.

Thirdly, Amazon's description of liquidated damages does not take into account the tremendous variations in the nature, scope, and duration of misconduct that constitutes a breach of the BSA. There is neither a rational nor proportional relationship between the withholding proceeds amount, the alleged breaches, and damages. A seller with little proceeds in the account may get away with large infractions, yet a seller with millions of dollars of sales proceeds may be harmed for small or no infractions. For Amazon, through Section 2 of the BSA, whether there is a small

infraction or large infraction or no infraction at all, one cash seizure of whatever amount of the entire sales proceeds fits all ... with no sense of proportionality. By the end, all sellers, including the Seller here, get not only the "death penalty" of account deactivation but also a theft of their money, no matter whether there are any breaches or not, which type and level of the alleged breach, and what amount of alleged damages. Again, it is difficult to square this result with a "reasonable forecast" of actual damages.

Fourthly, Amazon asserts that because it withholds sale proceeds that accrue over a limited period ("generally" 14 days), it "withheld only a small fraction of Seller's sale proceeds." But Amazon's Section 2 does not describe liquidated damages as a specified percentage of a seller's total sale proceeds. It is not necessarily true that sale proceeds for a 14-day period will be a "small fraction" of a seller's total sale proceeds. If the seller starts selling on the platform shortly before Amazon brings the hammer down, the affected proceeds may be a very large percentage of the total proceeds. In addition, and as already discussed, sale proceeds may increase dramatically with time, such that deactivating an account and withholding proceeds at an inopportune time for the seller affects a much larger percentage of its total proceeds than would otherwise be the case. In any event, the test is not the percentage of a seller's total sale proceeds the amount of liquidated damages represents; it is whether that amount is a reasonable forecast of actual damages.

Fifthly, the liquidated damages clause in Section 2 does not say Amazon would withhold only 14 days of sale proceeds. Rather, it provides that Amazon can performantly withhold "ANY payment" in the seller account. The proceeds subject to that provision are those that have accumulated in whatever period of time has passed since Amazon's most recent remittance of proceeds to the seller. For various reasons, that period can be less or more—or more than 14 days. Amazon may implement its withholding decision at any time within a 14-day sale proceeds accrual

period. Indeed, Amazon indignantly disclaims a practice of waiting until the 14th day (or a day shortly following Prime Day) to deactivate an account and withhold proceeds so as to maximize its take. On the other side of the coin, the period between remittances can as a practical matter, exceed 14 days if one of many possible technical or logistical problems with electronic funds transmission develops. In addition, the BSA provides that the Remittance Calculation Date (defined as two business days prior to the date of remittance) may be deferred up to 14 days, be doubled to 30 days, or even longer when a seller initially provides Amazon its bank account information or later changes that information, or in other scenarios.

Finally, even if it is assumed that the period during which sale proceeds accrue before deactivation and withholding is uniformly 14 days, why is it 14 days? Why not 5 days? 21 days? Or 30 days? Amazon offers no answer, which is to say that Amazon offers no rationale for its supposed forecast. Fourteen days is simply the period during which proceeds "generally" accrue before remittance to some sellers and which therefore corresponds with the number of proceeds readily available to Amazon. This does not pass the reasonable forecast test either.

The liquidated damages clause in Section 2 appears not to be a reasonable forecast, or indeed any forecast, of actual damages flowing from a breach but merely an expedient device for the seamless forfeiture of a seller's accrued sale proceeds upon Amazon's determination that it has breached. Therefore, it is an unenforceable penalty clause.[2]

## C.  The Final Award Meets The Standard Of Manifest Disregard Of The Law.

---

[2] Part of Section B and A is cited from "Final Award" in *Dongguan Yanqiude Trading Co., Ltd. v. Amazon, et al.* (ICDR Case No, 01-21-0018-1509) dated August 12, 2022 (the "Yanqiude Award"), attached hereto and incorporated by reference as Exhibit P8 for Petition 1, Final Award" in *Dongguan Likaixiao Technology Co., Ltd. v. Amazon, et al.* (ICDR Case No. 01-21-0018-1838) dated January 30, 2023, and other final awards of *Sellers v. Amazon* as Exhibit P7, P9 and P10,

The New York Court of Appeal court established two elements for proving arbitrators' manifest disregard of the law: "[t]o modify or vacate an award on the ground of manifest disregard of the law, a court must find "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case" *Wien & Malkin LLP v. Helmsley-Spear, Inc.,* 2006 NY Slip Op 1246, ¶ 8, 6 N.Y.3d 471, 481, 813 N.Y.S.2d 691, 697, 846 N.E.2d 1201, 1207 (2006) (quoting *Wallace v Buttar,* 378 F.3d 182, 189 [2d Cir 2004]).

In *Barclays Capital Inc. v. Shen*, 20 Misc. 3d 319 (N.Y. Misc. 2008), the New York Supreme Court ruled, "It is beyond dispute that the panel was familiar with the Rosenberg II decision. The decision and its impact on the pending arbitration had been vigorously argued before the panel in both oral and written motions by the petitioner".

In the current case, during the written submission (including the initial brief and reply brief) and hearing process, parties argued vigorously about the governing legal principle-reasonable forecast test and its impact on the arbitration. The Arbitrator was fully briefed about this matter and acknowledged in the Final Award that parties made such arguments regarding the reasonable forecast test. It showed that the Arbitrator undoubtedly knew of this governing legal principle, but the Arbitrator still refused to apply it or ignored it altogether.

Also, this governing legal principle is well-defined, explicit, and clearly applicable to the case. In *Barclays Capital Inc. v. Shen*, 20 Misc. 3d 319 (N.Y. Misc. 2008), the New York Supreme Court ruled that "Rosenberg II is explicit and directly applicable to this case. It unequivocally rules out monetary damages, of any kind, for a claimed defamation in a required U-5 filing".

In the current case, the primary legal issue is, regardless of the alleged breach or not, whether Section 2 is a valid liquidated damage clause, the reasonable forecast test is explicit and

directly applicable to the current case. Furthermore, Section 2 provides that Amazon can solely determine and permanently withhold ANY payment to the seller, and nothing in Section 2 provides that Amazon would retain only two weeks of accrued sales proceeds. The explicit wording of "ANY payment" in Section 2 is exceedingly unreasonable, to such an extent that it cannot satisfy the reasonable forecast test. Upon reviewing Section 2, any reasonable person would perceive Section 2 as overly aggressive and unjust. It's implausible that "ANY payment" could be seen as a reasonable forecast. Nonetheless, the Arbitrator, aware of this ruling legal principle - a principle that is well-defined, explicit, and clearly applicable - chose to disregard it in this case.

The Barclays Capital court holds that the two prongs of the manifest disregard doctrine are satisfied in the case and therefore vacated the award. The same rule applies here. The two prongs of the manifest disregard doctrine are also satisfied in this case. Therefore, the part of ruling Section 2 enforceable in the Final Award should be vacated.

## V.   THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT IT VIOLATES STRONG PUBLIC POLICY RULE SECTION 2 ENFORCEABLE.

### A.   The Shaffer Court Ruled Section 8 Of The BSA Is Unenforceable As It Violates Public Policy Under Washington Law's 6-Factor Balancing Test.

In *Shaffer v. Amazon Servs.* (In re Potential Dynamix LLC) Case No.: 2:11-bk-28944-DPC (Bankr. D. Ariz. Feb. 15, 2021), the court observed that to determine whether an agreement is likely to be declared invalid on public policy grounds, Washington law applies a 6-factor balancing test. *Riley v. Iron Gate Self Storage,* 198 Wash. App. 692, 701, 395 P.3d 1059, 1065 (2017).

The *Shaffer* court ruled that Section 8 of the BSA satisfies a majority of the factors listed above, therefore, is unenforceable. Section 8 of the BSA is a liability limitation clause, which provides that Amazon will NOT be liable for any damages arising from the BSA. Per Section 3 of

the BSA, Amazon can terminate the BSA with any seller at will. Together with Section 8, Amazon can kick any seller, at any time, at will, out of its retail platform without any liability.

The *Shaffer* court addresses the 6 factors above in order.

"1. Amazon operates in a regulated industry and must comply with a myriad of statutory and regulatory requirements.

2. Amazon is the dominant online platform for internet sales of most any product one can imagine. One can argue that Amazon provides an essential or necessary public service, especially during the current pandemic and e-commerce era.

"A common thread runs through those cases in which exculpatory agreements have been found to be void as against public policy ... they are all essential public services - hospitals, housing, public utilities, and public education." *Shields v. Sta-Fit, Inc.*, 79 Wash. App. 584, 589 (1995).

3. Amazon holds itself out to the general public as willing to sell its services to any member of the public who seeks it, subject to certain limitations.

4. Whether or not Amazon's platform is considered essential, it does possess a decisive advantage of bargaining strength. Although the Debtor could have taken its business elsewhere if they disagreed to the provisions found in the Agreement, there really is no comparable internet-based channel it could have used to sell its tens of thousands of products. In the world of e-commerce, Amazon is the go-to online shopping platform. That said, the Debtor did nominally have the option of taking its business elsewhere.

5. Factor 5 requires a finding of an adhesion contract. Washington courts consider the following in determining whether a contract is an adhesion contract: "(1) whether the contract is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other

on a take it or leave it basis, and (3) whether there was no true equality of bargaining power between the parties." *Zuver v. Airtouch Commc'ns, Inc.,* 153 Wash. 2d 293, 103 P.3d 753 (2004).

The Agreement was a standardized form that bound a customer to its terms merely by using Amazon's services. There was no possibility or hope of Debtor modifying any terms or provisions in the Agreement, there could be no negotiation, and no signatures were required. The Agreement was truly a "take it or leave it" proposition. The Agreement is an adhesion contract.

6. Under the Agreement, Amazon gained exclusive control over the Debtor's inventory. This fact placed the Debtor under the tight control of Amazon.

At least 5, and possibly 6, of the Washington factors point towards recognition that its public policy is violated by the liability limitation contained in Section 8 of the parties' Agreement. Accordingly, this Court finds Section 8  unenforceable as violative of Washington's public policy and violates the 3rd requirement if the Clause were to be enforceable". Id. *Shaffer v. Amazon Servs.* Case No.: 2:11-bk-28944-DPC (Bankr. D. Ariz. Feb. 15, 2021)

**B.  The Same Rules from The *Shaffer* Case Apply to Section 2 Of The BSA.**

As the *Shaffer* court observed, Amazon is the dominant online platform for internet sales of most any product one can imagine. It reportedly controls 65% to 70% of all U.S. online marketplace sales[3]. As Amazon possesses such dominance, small retailers do not have any viable or meaningful choice other than to accept Amazon's terms should they wish to get their products in front of online consumers on Amazon's online retail platform.[4] The Agreement is an adhesion contract.

---

[3] *See* "*Investigation of Competition in Digital Markets,*" Majority Staff Report and Recommendations, House Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary (Oct. 6, 2020) (hereinafter referred to as the "House Report"), available at: https://www.govinfo.gov/content/pkg/CPRT-117HPRT47832/pdf/CPRT-117HPRT47832.pdf.
[4] Marcia Savage, "*Amazon's e-commerce dominance: Is the price too high*?", THE FUTURE OF COMMERCE (January 28, 2022), available at https://www.the-future-of-commerce.com/2022/01/28/amazons-e-commerce-dominance-is-the-price-too-high.

Amazon also provides the sellers with the Fulfillment by Amazon ("FBA") service.[5] Third-party sellers who use the FBA service keep their product inventory in Amazon's warehouses or "fulfillment centers."  After a customer place an order online, Amazon fulfills the order by picking, packing, and shipping those products.[6] The majority of third-party sellers not only use but rely on the FBA service,[7] "despite the high fees associated with this service, to maintain a favorable search position afforded to them by Amazon's algorithm."[8]

Under the Agreement, Amazon gained exclusive control over the Seller's account, selling privilege to sell any product on Amazon.com, the inventory in Amazon's warehouse, and the sales proceed in the seller account on Amazon seller central.

All the Washington factors point towards recognition that its public policy is violated by the unenforceable penalty contained in Section 2 of the BSA. Accordingly, ***Section 2 is unenforceable as violative of Washington's public policy***. The decision to rule Section 2 enforceable in the Final Award should be vacated.

### C. Beyond Section 2, the Compulsory Arbitration Clause in Section 18 Also Forms A Part of Amazon's Strategy to Control Sellers.

Amazon relies on automated error-prone fraud detection software to identify alleged breaches of the BSA for millions of third-party sellers. These algorithmic errors lead to abrupt account deactivation, in addition to the withholding of sales proceeds, both of which can be financially devastating to third-party sellers. Amazon reportedly blocked over 55,000 seller

---

[5] See "Fulfillment by Amazon," available at https://sell.amazon.com/fulfillment-by-amazon.
[6] Id.
[7] The House Report at 288, n.1780-81 ("More than 73% of all … sellers worldwide reportedly rely on FBA services").
[8] *Id.* at n.1781 (explaining that seller success on Amazon is tied to its use of FBA services because Amazon's algorithm favors FBA sellers).

accounts in 2021,[9] seizing sales proceeds possibly amounting to billions of dollars. Amazon has set up the perfect contractual and legal framework to be able to behave in such arbitrary manners:

Firstly, Amazon's adhesion contract (the BSA) contains

- Section 3, entitling Amazon to deactivate *any* seller account at *any* time ***at will***;

- Section 8, exonerating Amazon from any liability related to the BSA; and

- Section 2, entitling Amazon to ***seize <u>any</u> sales proceeds*** in the account, whenever Amazon solely determines that the seller has violated the BSA terms.

Secondly, to thwart thousands of sellers initiating cost-effective class action lawsuits, Amazon has embedded a mandatory arbitration clause within Section 18 of its BSA. This compels thousands of sellers to pursue individual arbitrations, each incurring around $40,000 in administrative and arbitrator fees (for the regular arbitration process).  Many sellers, already financially strained by account deactivation and consequent loss of revenue and access to its funds, are forced to abandon their pursuit of justice due to the prohibitive cost of arbitration.

Thirdly, in instances where some sellers manage to initiate arbitration, some arbitrators may rule Section 2 unenforceable and command the return of sales proceeds to the seller. However, per Section 8, Amazon is exempted from liability for all damages arising out of the account deactivation. In such cases, Amazon merely returns the sellers their own funds, resulting in a negligible financial impact on Amazon itself.

On the other hand, some arbitrators may rule Section 2 enforceable, thereby permitting Amazon to retain the entirety of the sellers' sales proceeds, as was the case in the Final Award of this dispute. Faced with this outcome, most sellers give up, recognizing the slim likelihood of

---

[9] Katherine Anne Long, "*Amazon abruptly banned Washington state treat-maker Chukar Cherries. Months of appeals went unheeded,*" THE SEATTLE TIMES (Sept. 27, 2021), available at https://www.seattletimes.com/business/amazon/amazon-abruptly-banned-washington-state-treat-maker-chukar-cherries-months-of-appeals-went-unheeded.

successfully petitioning to vacate the award due to the very limited scope of judicial review of arbitration awards.

Fourthly, Amazon typically requests a reasoned award, ensuring a ***barely colorable justification*** for the outcome reached, leaving rare sellers who try vacating the award with an even smaller chance.

Using this 4-part strategy within the U.S. legal system, Amazon can continue its arbitrary account deactivation and unjust seizing of sales proceeds.

It is indeed hoped that the judiciary is ready to evaluate whether the "ANY payment" provision in Amazon's Section 2 can pass the "reasonable forecast" test under Washington law. This is imperative in order to address Amazon's practice of seizing billions of dollars from sellers' proceeds, facilitated by this overreaching and notorious clause. It's also concerning that such a provision exists and raises questions about the principles of "the rule of law" and "equality before the law."

## VI.    CONCLUSION

For the foregoing reasons that by ruling Section 2 of the BSA enforceable, the Final Award is completely irrational, manifestly disregards the law, and violates strong public policy, the Court should vacate the Final Award, rule Section 2 is unenforceable, or order a rehearing by a new and qualified arbitrator.

Dated: September 27, 2023                    Respectfully submitted,


                                                              */s/ Julie Guo*
                                                              JULIE GUO

                                                              JS Law
                                                              200 East 36th Street, 16th Floor
                                                              New York, New York 10016
                                                              jslawusa@gmail.com
                                                              (917) 773-1868