UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

COWIN TECHNOLOGY CO., LTD.,

       Petitioners,      Case No. 1:23-cv- 03054-ALC

   -against-

AMAZON.COM SERVICES LLC,
AMAZON.COM, INC.,

       Respondents.
--------------------------------------------------------X
AMAZON.COM SERVICES LLC,
AMAZON.COM, INC.,

       Petitioners,

   -against-

COWIN TECHNOLOGY CO., LTD.,

       Respondents.
--------------------------------------------------------X


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**

**MOTION TO VACATE ARBITRATION AWARD AND IN REPLY TO**

**<u>RESPONDENTS' CROSS MOTION AND OPPOSITION THERETO</u>**


**JS LAW OFFICE**
200 East 36th Street, Suite 16A
New York, New York 10016
jslawusa@gmail.com
(917) 773-1868

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ............................................... 5

II.  THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT             IT
MANIFESTLY DISREGARDS THE LAW TO RULE SECTION 2 ENFORCEABLE ............. 5

  A.   Amazon's Section 2 Failed To Explicitly Designate The Amount To Be Paid "As
Liquidated Damages And Not As A Penalty Or Forfeiture. ...................................... 5

  B.   Amazon's Section 2 Failed The Reasonable Forecast Test For Validity Of A Liquidated
Damages Clause. It Is An Unenforceable Penalty Clause. ...................................... 6

  C.   The Final Award Meets The Standard Of Manifest Disregard Of The Law. ................... 10

III.  THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT IT VIOLATES
STRONG PUBLIC POLICY TO RULE SECTION 2 ENFORCEABLE. .................................. 12

  A.   The Shaffer Court Ruled Section 8 Of The BSA Is Unenforceable As It Violates Public
Policy Under Washington Law's 6-Factor Balancing Test...................................... 12

  B.   The Same Rules from The Shaffer Case Apply to Section 2 Of The BSA........................ 13

IV.  CONCLUSION ............................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                                          Page(s)

*Barclays Capital Inc. v. Shen,*
   20 Misc. 3d 319 (N.Y. Misc. 2008)…………………………………………… …11, 12

*Barr v. Interbay Citizens Bank,*
   96 Wn.2d 692, 649 P.2d 827 (1981)……………………………………...........……12

*Brower Company v. Garrison,*
   2 Wash. App. 424, 433, 468 P.2d 469 (1970)……………………………………………7

*Forest Marketing Enterprises, Inc. v. State DNR,*
   125 Wash. App. 126, 104 P.3d 40 (2005)…………………………..…………………...5

*Kennewick Educ. Ass'n v. Kennewick Sch. Dist. No. 17,*
   35 Wash. App. 280, 666 P.2d 928 (1983)…………………..………………...12, 13

*Riley v. Iron Gate Self Storage,*
   198 Wash. App. 692, 395 P.3d 1059 (2017)…………………………………..….…13

*Shaffer v. Amazon Servs.* (*In re Potential Dynamix LLC*),
   Case No.: 2:11-bk-28944-DPC (Bankr. D. Ariz. Feb. 15, 2021)…………………….passim

*Spokane Truck & Dray Co. v. Hoefer,*
   2 Wash. 45, 25 P. 1072 (1891)……………………………….…………………………...12

*Steele v. Johnson,*
   76 Wn.2d 750, 458 P.2d 889 (1969)……………………………………………………...12

*Wallace v. Buttar,*
   378 F.3d 182 (2d Cir.2004)……………………………………...…………..…....11

*Watson v. Ingram,*
   124 Wash. 2d 845, 881 P.2d 247 (1994)………………………….…………………6, 7

*Wien & Malkin Llp v. Helmsley-Spear, Inc.,*
   2006 NY Slip Op 1246, ¶ 8, 6 N.Y.3d 471, 813 N.Y.S.2d 691, 846 N.E.2d 1201
(2006)……………………………………………………………………..……...11

*Williams v. Walker-Thomas Furniture Co.,*
   350 F.2d 445 (D.C. Cir. 1965)…………………….……………….…………………7

**Arbitration Cases**

*Dongguan Yanqiude Trading Co., Ltd. v. Amazon, et al.*
   (ICDR Case No, 01-21-0018-1509), "Award" dated August 12, 2022……………..……...6, 10

Finals Award as Exhibits to Petition 1………...……………………………………….......6

## I.    **PRELIMINARY STATEMENT**

Petitioner submits this Reply Memorandum of Law in further support of their Motion to vacate the arbitration award and in opposition to the Motion to confirm the Award. The Award must be vacated on the grounds that ***the decision is completely irrational, manifestly disregards the law, and violates strong public policy*** by ruling Section 2 of the Amazon Services Business Solutions Agreement ("BSA" or the "Agreement", Exhibit P-2 to Petition 1) is a valid liquidated damage clause and enforceable.

## II.    **THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT IT MANIFESTLY DISREGARDS THE LAW TO RULE SECTION 2 ENFORCEABLE**

Section 2 of the BSA provides in relevant parts: "If we determine that your account—or any other account you have operated—has been used to engage in deceptive, fraudulent, or illegal activity (including the sale of counterfeit goods), or to repeatedly violate our Program Policies, then we may in our ***sole*** discretion ***permanently*** withhold ***any payments*** to you." Amazon portrays this sentence as a valid liquidated damages clause, while Seller argues it as an unenforceable penalty.

**A. Amazon's Section 2 Failed To Explicitly Designate The Amount To Be Paid "As Liquidated Damages And Not As A Penalty Or Forfeiture.**

Liquidated damages clauses often explicitly disclaim that the amount payable is a penalty or forfeiture, designating the amount to be paid "as liquidated damages and not as a penalty or forfeiture." See, e.g., *Forest Marketing Enterprises, Inc. v. State DNR*, 125 Wash. App. 126, 131, 104 P.3d 40, 43 (2005) (liquidated damages clause provided that "these payments are agreed to as liquidated damages and not as penalties").

It is noteworthy that what Amazon trumpets as a liquidated damages clause fails to include those words. Nor does the clause in any way take pains to distinguish the amount to be paid thereunder from a penalty or forfeiture, allude to the test for the validity of a liquidated damages clause, or explain how the parties' relationship satisfies that test. Indeed, the language does not even suggest, much less express, that the amount withheld and appropriated thereunder serves as compensation to Amazon. These drafting deficiencies raise the question of whether Amazon intended section 2 of the BSA to serve as a liquidated damages clause or whether it now retrospectively and expediently characterizes the clause as such.

In addition, the language in Section 2, "we *may* in our sole discretion permanently withhold any payments to you," plainly indicates that its invocation of the clause is *optional*. This is problematic for Amazon: "While a few courts have ruled that sophisticated parties may agree to optional liquidated damages clauses, … the majority rule is that such clauses are unenforceable." *See* J.M. Perillo, Calamari, and Perillo on Contracts § 14-32 (6th ed. 2009) (*optional liquidated damages provisions "have been struck down as they do not involve a reasonable attempt definitively to estimate the loss"*). Also, optional liquidated damages clauses are stuck down because they can be invoked selectively when liquidated damages exceed provable actual damages.[1]

## B. Amazon's Section 2 Failed The Reasonable Forecast Test For Validity Of A Liquidated Damages Clause. It Is An Unenforceable Penalty Clause.

In *Watson v. Ingram*, the court recites the standard to determine whether a liquidated damages clause is enforceable: "Washington courts have applied a 2-part test from the

---

[1] Part of Section A is cited from "Final Award" in *Dongguan Likaixiao Technology Co., Ltd. v. Amazon, et al.* (ICDR Case No. 01-21-0018-1838) dated January 30, 2023.

Restatement of Contracts § 339, at 552 (1932). Liquidated damages clauses are upheld if **the following _two_ factors are satisfied**: 'First, the amount fixed must be a **reasonable forecast** of just compensation for the harm that is caused by the breach. Second, the harm must be such that it is incapable or very **difficult of ascertainment**.'" (Internal citations omitted.)

Washington law imposes a reasonableness test "in determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made." *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 450 (D.C. Cir. 1965). It means that the reasonableness of a forecast of damages in a liquidated damages clause is judged prospectively—i.e., **as of the time the contract was entered**. *Watson v. Ingram*, 124 Wash. 2d 845, 851, 881 P.2d 247, 249 (1994).

The clause becomes a penalty when the amount fixed is stipulated, irrespective of the damage sustained. In *Brower Company v. Garrison*, 2 Wash. App. 424, 433, 468 P.2d 469, 475 (1970), the Washington Court of Appeals held that the number of liquidated damages must be a reasonable estimation of compensation for damages caused by a contractual breach. It also ruled that "If there is any **reasonable relationship**" between the amount of liquidated damages and the forecast of actual damages, "the clause must stand." There must nonetheless be such a forecast underlying the clause, and that forecast must be grounded in reason. Put differently, **the basis of a liquidated damages clause must be rational, not arbitrary**.

In this case, the forfeiture of **all** sales proceeds is punitive. A whole confiscation of sales proceeds, which, under the contract, Amazon has an obligation to turn over to Petitioner, is neither reasonable nor just compensation for the speculative harm that Amazon has allegedly suffered. Amazon **cannot** seriously argue that the amount of a third-party seller's funds to which it has

access at a time of it is choosing just so happens in every case to be a reasonable forecast of just compensation for the harm caused by the breach.

**Firstly**, the amounts of sale proceeds that await remittance in seller accounts vary by orders of magnitude due to differences in sale volumes. At any particular moment in time, some accounts will contain a minuscule amount awaiting remittance, some will contain tens of thousands, some (like Seller's in this case) will contain hundreds of thousands, and some will contain millions.

**Secondly**, the amounts of sale proceeds that await disbursement also vary according to the point in time at which Amazon announces its decision to withhold funds. Of course, Amazon is in complete control of this variable. It would routinely time that action to correspond to the date a disbursement would otherwise have been due or right after Amazon Prime Date Sales, thereby maximizing its take. During the mass seller account blocking in 2021, many sellers' amount was blocked right after Amazon Prime Day. The Seller's account, in this case, was deactivated right after Amazon Prime Day in 2021. It shows Amazon did control and choose the account blocking action time to maximize its take.

**Thirdly**, Amazon's description of liquidated damages does not take into account the tremendous variations in the nature, scope, and duration of misconduct that constitutes a breach of the BSA. There is neither a rational nor proportional relationship between the withholding proceeds amount, the alleged breaches, and damages. A seller with little proceeds in the account may get away with large infractions, yet a seller with millions of dollars of sales proceeds may be harmed for small or no infractions. For Amazon, through Section 2 of the BSA, whether there is a small infraction or large infraction or no infraction at all, one cash seizure of whatever amount of the entire sales proceeds fits all ... with no sense of proportionality. By the end, all sellers, including the Seller here, get not only the "death penalty" of account deactivation but also a theft of their

money, no matter whether there are any breaches or not, which type and level of the alleged breach, and what amount of alleged damages. Again, it is difficult to square this result with a "reasonable forecast" of actual damages.

**Fourthly**, Amazon asserts that because it withholds sale proceeds that accrue over a limited period ("generally" 14 days), it "withheld only a small fraction of Seller's sale proceeds." But Amazon's Section 2 does not describe liquidated damages as a specified percentage of a seller's total sale proceeds. It is not necessarily true that sale proceeds for a 14-day period will be a "small fraction" of a seller's total sale proceeds. If the seller starts selling on the platform shortly before Amazon brings the hammer down, the affected proceeds may be a very large percentage of the total proceeds. In addition, and as already discussed, sale proceeds may increase dramatically with time, such that deactivating an account and withholding proceeds at an inopportune time for the seller affects a much larger percentage of its total proceeds than would otherwise be the case. In any event, the test is not the percentage of a seller's total sale proceeds the amount of liquidated damages represents; it is whether that amount is a reasonable forecast of actual damages.

**Fifthly**, the liquidated damages clause in Section 2 does not say Amazon would withhold only 14 days of sale proceeds. Rather, it provides that Amazon can performantly withhold "ANY payment" in the seller account. The proceeds subject to that provision are those that have accumulated in whatever period of time has passed since Amazon's most recent remittance of proceeds to the seller. For various reasons, that period can be less or more—or more than 14 days. Amazon may implement its withholding decision at any time within a 14-day sale proceeds accrual period. Indeed, Amazon indignantly disclaims a practice of waiting until the 14th day (or a day shortly following Prime Day) to deactivate an account and withhold proceeds so as to maximize its take. On the other side of the coin, the period between remittances can as a practical matter,

exceed 14 days if one of many possible technical or logistical problems with electronic funds transmission develops. In addition, the BSA provides that the Remittance Calculation Date (defined as two business days prior to the date of remittance) may be deferred up to 14 days, be doubled to 30 days, or even longer when a seller initially provides Amazon its bank account information or later changes that information, or in other scenarios.

**Finally**, even if it is assumed that the period during which sale proceeds accrue before deactivation and withholding is uniformly 14 days, why is it 14 days? Why not 5 days? 21 days? Or 30 days? Amazon offers no answer, which is to say that Amazon offers no rationale for its supposed forecast. Fourteen days is simply the period during which proceeds "generally" accrue before remittance to some sellers and which therefore corresponds with the number of proceeds readily available to Amazon. This does not pass the reasonable forecast test either.

The liquidated damages clause in Section 2 appears ***not*** to be a reasonable forecast, or indeed any forecast, of actual damages flowing from a breach but merely an expedient device for the seamless forfeiture of a seller's accrued sale proceeds upon Amazon's determination that it has breached. Therefore, it is an unenforceable penalty clause.[2]

## C.  The Final Award Meets The Standard Of Manifest Disregard Of The Law.

The New York Court of Appeal court established two elements for proving arbitrators' manifest disregard of the law: "[t]o modify or vacate an award on the ground of manifest disregard of the law, a court must find 'both that (1) the arbitrators ***knew*** of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well

---

[2] Part of Section B and A is cited from "Final Award" in *Dongguan Yanqiude Trading Co., Ltd. v. Amazon, et al.* (ICDR Case No, 01-21-0018-1509) dated August 12, 2022 (the "Yanqiude Award"), attached hereto and incorporated by reference as Exhibit P8 for Petition 1, Final Award" in *Dongguan Likaixiao Technology Co., Ltd. v. Amazon, et al.* (ICDR Case No. 01-21-0018-1838) dated January 30, 2023, and other final awards of *Sellers v. Amazon* as Exhibit P7, P9 and P10,

*defined, explicit, and clearly applicable* to the case.'" *Wien & Malkin LLP v. Helmsley-Spear, Inc.,* 2006 NY Slip Op 1246, ¶ 8, 6 N.Y.3d 471, 481, 813 N.Y.S.2d 691, 697, 846 N.E.2d 1201, 1207 (2006) (quoting *Wallace v Buttar,* 378 F.3d 182, 189 [2d Cir 2004]).

In *Barclays Capital Inc. v. Shen*, 20 Misc. 3d 319 (N.Y. Misc. 2008), the New York Supreme Court ruled, "It is beyond dispute that the panel was familiar with the Rosenberg II decision. The decision and its impact on the pending arbitration had been vigorously argued before the panel in both oral and written motions by the petitioner".

In the current case, during the written submission (including the initial brief and reply brief) and hearing process, parties argued vigorously about the governing legal principle-reasonable forecast test and its impact on the arbitration. The Arbitrator was fully briefed about this matter and acknowledged in the Final Award that parties made such arguments regarding the reasonable forecast test. It showed that the Arbitrator undoubtedly knew of this governing legal principle, but the Arbitrator still refused to apply it or ignored it altogether.

Also, this governing legal principle is well-defined, explicit, and clearly applicable to the case. In *Barclays Capital Inc. v. Shen*, 20 Misc. 3d 319 (N.Y. Misc. 2008), the New York Supreme Court ruled that "Rosenberg II is explicit and directly applicable to this case. It unequivocally rules out monetary damages, of any kind, for a claimed defamation in a required U-5 filing".

In the current case, the primary legal issue is, regardless of the alleged breach or not, whether Section 2 is a valid liquidated damage clause, the reasonable forecast test is explicit and directly applicable to the current case. Furthermore, Section 2 provides that Amazon can solely determine and permanently withhold ANY payment to the seller, and nothing in Section 2 provides that Amazon would retain only two weeks of accrued sales proceeds. The explicit wording of "ANY payment" in Section 2 is exceedingly unreasonable, to such an extent that it cannot satisfy

the reasonable forecast test. Upon reviewing Section 2, any reasonable person would perceive Section 2 as overly aggressive and unjust. It's implausible that "ANY payment" could be seen as a reasonable forecast. Nonetheless, the Arbitrator, aware of this ruling legal principle - a principle that is well-defined, explicit, and clearly applicable - chose to disregard it in this case.

The *Barclays Capital* court holds that the two prongs of the manifest disregard doctrine are satisfied in the case and therefore vacated the award. The same rule applies here. The two prongs of the manifest disregard doctrine are also satisfied in this case. Therefore, the part of ruling Section 2 enforceable in the Final Award should be vacated.

### III.  THE AWARD SHOULD BE VACATED ON THE GROUNDS THAT IT VIOLATES STRONG PUBLIC POLICY TO RULE SECTION 2 ENFORCEABLE.

### A. The *Shaffer* Court Ruled Section 8 Of The BSA Is Unenforceable As It Violates Public Policy Under Washington Law's 6-Factor Balancing Test.

Under Washington law, it has long been established that recovery of punitive damages is contrary to the public policy of the State and will not be allowed unless expressly authorized by statute. *Barr v. Interbay Citizens Bank*, 96 Wn.2d 692, 699, 649 P.2d 827 (1981); *Steele v. Johnson*, 76 Wn.2d 750, 751, 458 P.2d 889 (1969); *Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45, 25 P. 1072 (1891).

In *Kennewick Educ. Asso v. Kennewick Sch. Dist.*, the court held that: "The arbitrator had no authority to award punitive damages in any amount under the laws of the State of Washington and that it would be a strange situation, indeed, where an arbitrator would be allowed to fashion punitive damages and for this Court—which could not, had this matter been heard by a Court— could not have awarded punitive damages, and this Court then affirm an arbitrator's award of

punitive damages". *Kennewick Educ. Ass'n v. Kennewick Sch. Dist. No. 17*, 35 Wash. App. 280, 282, 666 P.2d 928, 930 (1983).

In *Shaffer v. Amazon Servs*. (In re Potential Dynamix LLC) Case No.: 2:11-bk-28944-DPC (Bankr. D. Ariz. Feb. 15, 2021), the court observed that to determine whether an agreement is likely to be declared invalid on public policy grounds, Washington law applies a 6-factor balancing test. *Riley v. Iron Gate Self Storage,* 198 Wash. App. 692, 701, 395 P.3d 1059, 1065 (2017).

The *Shaffer* court ruled that Section 8 of the BSA satisfies a majority of the factors listed above, therefore, is unenforceable. Section 8 of the BSA is a liability limitation clause, which provides that Amazon will NOT be liable for any damages arising from the BSA.

**B.  The Same Rules from The *Shaffer* Case Apply to Section 2 Of The BSA.**

According to the *Majority Staff Report and Recommendations, House Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary,* Amazon is the dominant online marketplace.  It reportedly controls about 65% to 70% of all U.S. online marketplace sales.[3] On September 26, 2023, the US government and 17 states sued Amazon in a landmark monopoly case reflecting years of allegations that the e-commerce giant abused its economic dominance and harmed fair competition.

Under Amazon's BSA, Amazon gained exclusive control over the Seller's account, selling privilege to sell any product on Amazon.com, the inventory in Amazon's warehouse, and the sales proceed in the seller account on Amazon seller central. It contains the unjust and unconscionable terms as listed below:

-  Section 3, entitling Amazon to deactivate ***any*** seller account at ***any*** time ***at will***;

-  Section 8, exonerating Amazon from ***any liability*** related to the BSA; and

---

[3] See Page 225 of Majority Staff Report and Recommendations, House Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary ("House Report", <u>Exhibit P-A2</u>)*,*

- Section 2, entitling Amazon to **seize _any_ sales proceeds** in the account, whenever Amazon solely determines that the seller has violated the BSA terms.

- Section 18, Mandatory Arbitration **and class action waiver Clause** ("Arbitration Agreement") forcing sellers to go through expensive arbitration proceedings for any dispute on an individual case basis, which includes some terms to force sellers to conduct arbitration in a prohibitively expensive way.

However, as the FTC alleges in the complaint, because of Amazon's dominance in e-commerce, sellers have **little option but to accept** Amazon's terms, resulting in higher prices for consumers and a worse consumer experience.[4]

As the _Shaffer_ court ruled, Section 8 of Amazon's BSA, the liability limitation clause violated strong public policies, thus unenforceable. The same analysis applies to Section 2 of the BSA. All the Washington factors point towards recognition that its public policy is violated by the unenforceable penalty contained in Section 2 of the BSA. Accordingly, **Section 2 is unenforceable as violative of Washington's public policy**. The decision to rule Section 2 enforceable in the Final Award should be vacated.

### IV.    CONCLUSION

For the foregoing reasons that by ruling Section 2 of the BSA enforceable, the Final Award is completely irrational, manifestly disregards the law, and violates strong public policy, the Court should vacate the Final Award, rule Section is unenforceable 2 (and Sections 3 and 8 are unenforceable), or order a rehearing by a new and qualified arbitrator.

Dated: October 31, 2023                              Respectfully submitted,

---

[4] Brian Fung, "US government and 17 states sue Amazon in landmark monopoly case" (September 28, 2023), available at https://www.cnn.com/2023/09/26/tech/ftc-sues-amazon-antitrust-monopoly-case/index.html

*/s/ Julie Guo*

JULIE GUO

JS Law
200 East 36th Street, Suite 16A
New York, New York 10016
jslawusa@gmail.com
(917) 773-1868